1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION**

| | |
|---|---|
| ROBERT ANTHONY CHAVEZ,<br><br>                Petitioner,<br><br>        v.<br><br>RON E. BARNES,<br><br>                Respondent. | ) Case No. CV 13-7468-AS<br>)<br>) **MEMORANDUM DECISION AND ORDER**<br>) **OF DISMISSAL**<br>)<br>)<br>)<br>)<br>) |

        Pursuant to 28 U.S.C. § 636, the parties have consented that the case may be handled by the undersigned United States Magistrate Judge (see Docket Entry Nos. 13, 21, 23).

## I.    INTRODUCTION

        On October 9, 2013, Robert Anthony Chavez ("Petitioner"), a California state prisoner who is represented by counsel, filed a Petition for Writ of Habeas Corpus by a Person in State Custody, pursuant to 28 U.S.C. § 2254 (Docket Entry No. 1). On February 11, 2014,

1

Petitioner filed a First Amended Petition for a Writ of Habeas Corpus ("FAP")(Docket Entry No. 14).  On July 18, 2014, Respondent filed an Answer to the First Amended Petition (Docket Entry No. 19). Petitioner did not file a Reply, or request an extension of time to do so.  For the reasons stated below, the First Amended Petition is DENIED and this action is DISMISSED with prejudice.

## II.  PROCEDURAL HISTORY

On July 2, 2010, a Los Angeles County Superior Court jury found Petitioner guilty of one count of attempted murder in violation of California Penal Code ("P.C.") §§ 664 and 187(a) and one count of possession of a firearm by a felon in violation of P.C. § 12021(a)(1)[1], and also found the following special allegations to be true: (1) the attempted murder was willful, deliberate and premeditated; (2) petitioner personally and intentionally discharged a firearm, i.e., a handgun, which caused great bodily injury to the victim (P.C. § 12022.53(d)); (3) petitioner personally and intentionally discharged a firearm, i.e., a handgun (P.C. § 12022.53(c)); (4) petitioner personally used a firearm, i.e., a handgun (P.C. § 12022.53(b)); and (5) petitioner personally caused great bodily injury upon the victim, not an accomplice to the murder (P.C. § 12022.7(a)).  (Clerk's Transcript ["CT"] 174-75, 179-80; 4 Reporter's Transcript ["RT"] 1804-05).[2]  On February 8, 2011, the trial court sentenced petitioner to state prison

---

[1]     Effective January 1, 2012, former P.C. § 12021(a) became P.C. § 29800(a).  People v. Correa, 54 Cal.4th 331, 334 n.1 (2012).

[2]     The jury found petitioner not guilty of two counts of assault with a firearm.  (See CT 176-77, 180; 4 RT 1805-06).

for life, plus 28 years.   (CT 217-22; 4 RT 2107-10).[3]

Petitioner  appealed his conviction and sentence to the California Court of Appeal, which, on July 25, 2012, affirmed the Judgment. (See Lodgments 1, 3-4).   Petitioner filed a Petition for Review with the California Supreme Court, which was summarily denied on October 10, 2012. (See Lodgments 5-6).[4]

### III.   FACTUAL BACKGROUND

Petitioner is not challenging the sufficiency of the evidence to support his conviction.   The following summary is taken from the "Background" section of the California Court of Appeal Opinion (see Lodgment 4 at 2-4), with added bracketed footnotes and citations:

Richard Mercado lived with his girlfriend Gloria and her children, Lorraine and Joe.  There was a rear house on the property where Gloria's daughter Rachel lived with [petitioner], who was her boyfriend.  Richard's sister Olivia lived in a house next door with

_____

[3]    Petitioner's sentence consisted of the following: life with the possibility of parole with respect to the willful, deliberate and premeditated attempted murder conviction, plus 25 years to life on the finding of personal discharge of a firearm which caused great bodily injury to the victim, plus a consecutive 3-year term for the the possession of a firearm by a felon conviction.   The court stayed sentences on the other findings.

[4]    Neither party has provided the Court with a copy of the California Supreme Court's Order denying the Petition for Review.   The Court takes judicial notice of the state court records that are available on the California Courts' website at http://appellatecases.courtinfo.ca.gov (last visited on May 4, 2015). The website provides: the date on which petitioner filed his Petition for Review with the California Supreme Court, and the date on which the Petition for Review was denied.

her two sons.[5]

On August 30, 2009, Richard was barbequing and drinking in front of the garage with his brothers, Andy and Fernando, and Olivia's sons.  Richard testified Lorraine left the house at one point and opened a gate, inadvertently allowing their pit bull to run into the street.  When Lorraine returned to the house without the dog, Richard reprimanded her and said she had to retrieve it. Lorraine got upset and denied having let the dog out.[6]

Rachel heard Lorraine yelling and came back out of the back house to investigate.  She had a drink in her hand and appeared to be intoxicated.  She joined Lorraine in yelling at Richard.  Then [petitioner] came outside and stood next to Rachel.  Richard told him to take Rachel inside, but petitioner just stood there. Richard got mad because [petitioner] wasn't trying to help the situation.[7]

"Q.  As you continued to get angrier and angrier the less he responded the worse it got for you?

"A.  The whole thing was he didn't seem he was drinking.  He seemed mellow, you know?  I'm asking him, he's not responding. These girls were just constantly yelling at me talking shit to me cussing every word they know, you know?

---

5   [See 2 RT 609-12, 634, 690-94, 717, 730; 3 RT 904-05, 984-85].

6   [See 2 RT 615-16, 692-93; 3 RT 905-10, 983-84, 1205].

7   [See 3 RT 910-13].

"Q.   And you felt disrespected?

"A.   Yeah.  I mean, it wasn't the first time it happened."[8]

Richard testified he told [petitioner] that "if he ain't gonna try to help out the situation he can just get out.  Get the fuck out of the yard, out of the house."[9]

Richard's brother Andy testified Richard was saying he wanted [petitioner] to leave because [petitioner] had been selling drugs out of the back house.  Richard was upset and Andy tried to calm him, but [petitioner] kept egging Richard on.   Richard hit [petitioner] and they started fighting.[10]

The fight was pretty even at first, with both men grappling and throwing punches.  But then, while Richard was on top of [petitioner], Rachel kicked Richard in the face and knocked him to the ground.   [Petitioner] took advantage of this and started getting the best of Richard.  Then someone pulled [petitioner] off Richard and the fight ended.[11]  Andy saw [petitioner] go into the back house and make a phone call:

"Q.  Did you hear what was being said?

"A.   Just like hurry up and come, . . . hurry up and get here.

---

8   [See 3 RT 955-56].

9   [3 RT 916].

10   [See 3 RT 917-18, 985-90].

11   [See 2 RT 700-06, 717-18; 3 RT 918-22, 991-92].

5

"Q.   You heard [petitioner] say that?

"A.   Yeah.  He was talking loud and still kind of full of adrenaline . . .  he was talking loud and just telling them to hurry up and get here . . . ."[12]


Olivia, who had come next door upon hearing the commotion, saw people trying to calm down Richard, who was very upset.  Olivia then returned to her house, but five or ten minutes later she heard the commotion start up again.  She saw four family members holding Richard and forcing him toward the front house.  Richard was really upset and screaming.[13]


About 20 or 30 minutes later, Olivia saw [petitioner] "leisurely" walk up the street from the corner.[14]  He had a gun in his hand[15] and, according to Andy, he was dressed differently than he had been during the fight.[16]  [Petitioner] pointed the gun at Richard and said something about a fight.  Richard tried to run and dive behind a car.  [Petitioner] fired two to four shots from about 10 to 12 feet away.  Richard fell and blacked out.  According to

---

[12]   [See 3 RT 992-93].

[13]   [See 2 RT 617-28, 630-33, 639, 709-11; 3 RT 924-26, 993-95].

[14]   "Q.  You saw [petitioner] walking down Lakeside?  [¶] A. Right.   Q.   He walked in a leisurely fashion would you say?  [¶] A. Yes." [2 RT 672].

[15]   Andy testified: "I seen him walking up with his hands behind his back, and then he seen . . . us because we were actually in front of the car.  He was coming from the back of the car.  When he seen us he pulled out a gun." [3 RT 996].

[16]   Andy testified: "I believe he was wearing different clothes[,] a different shirt." [3 RT 1026].

Olivia, [petitioner] then turned and "leisurely" walked away.[17][18]

Richard's brother Fernando followed [petitioner], taking cover behind some cars.  [Petitioner] turned around and fired three or four times, shooting either at Fernando or at the house.  [Petitioner] then ran toward a silver Dodge Charger parked on the corner and jumped into the rear seat.  He pointed the gun out the window and fired again, shooting four or five times toward where Fernando had been standing.  The Dodge drove off.[19]

Richard had been hit in the elbow and the back, and he was in the hospital for a week.[20]

[Petitioner] did not present any evidence at trial.

/// 
/// 
/// 

---

[17]   "Q.   Okay.   Then after [petitioner] shot your brother he turned around and leisurely walked back up Lakeside; is that correct? [¶] A.   Yes, that's correct." [2 RT 673].

[18]   [See 2 RT 633-34, 638-42, 644-46, 672-73, 711-13; 3 RT 926-30, 932, 995-1001, 1026].

[19]   [See 2 RT 646-50, 687-88, 714-15, 718-20; 3 RT 999-1002].

[20]   [See 2 RT 655-66; 3 RT 932, 934].

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.   PETITIONER'S CLAIMS**

The First Amended Petition raises the following claims for federal habeas relief:

Ground One:      The trial court failed to <u>sua</u> <u>sponte</u> instruct the jury on the lesser included offense of attempted voluntary manslaughter.  (FAP at 5).[21]

Ground Two:   Petitioner was improperly punished for two offenses arising from the same act.  (FAP at 5).

**V.   <u>STANDARD OF REVIEW</u>**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The term "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time

---

[21] All citations to filings in this case refer to the pagination provided by the Court's docket.

8

the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-72 (2003); <u>see also</u> <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1399 (2011); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)("clearly established Federal law" consists of holdings, not dicta, of Supreme Court decisions "as of the time of the relevant state-court decision"). However, federal circuit law may still be persuasive authority in identifying "clearly established" Supreme Court law or in deciding when a state court unreasonably applied Supreme Court law. <u>See</u> <u>Stanley v. Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011); <u>Tran v. Lindsey</u>, 212 F.3d 1143, 1154 (9th Cir. 2000).

A state court decision is "contrary to" clearly established federal law established law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts. <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam); <u>Williams</u>, <u>supra</u>, 529 U.S. at 405-06; <u>see also</u> <u>Cullen v. Pinholster</u>, <u>supra</u> ("To determine whether a particular decision is 'contrary to' then-established law, a federal court must consider whether the decision 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court."). When a state court decision adjudicating a claim is contrary to controlling Supreme Court law, the reviewing federal habeas court is "unconstrained by § 2254(d)(1)." <u>Williams</u>, <u>supra</u>, 529 U.S. at 406. However, the state court need not cite the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." <u>Early</u>, <u>supra</u>.

A state court decision involves an "unreasonable application" of clearly established federal law "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, supra, 529 U.S. at 407; Cullen v. Pinholster, supra; Woodford v. Visciotti, 537 U.S. 19, 24-27 (2002) (per curiam); Moore v. Helling, 763 F.3d 1011, 1016 (9th Cir. 2014)(stating that courts may extend Supreme Court rulings to new sets of facts on habeas review "only if it is 'beyond doubt' that the ruling apply to the new situation or set of facts."), pet. for cert. filed (March 23, 2015)(No. 14-9046). A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing law was incorrect, erroneous or even "clear error." Lockyer, supra, 538 U.S. at 75; Harrington v. Richter, 562 U.S. 86, 101 (2011)("A state court's determination that a claim lacks merit precludes federal relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). Rather, a decision may be rejected only if the state court's application of Supreme Court law was "objectively unreasonable." Lockyer, supra; Woodford, supra; Williams, supra, 529 U.S. at 409; see also Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004)("objectively unreasonable" standard also applies to state court factual determinations).

When a state court decision is found to be contrary to or an unreasonable application of clearly established Supreme Court law, a federal habeas court "must then resolve the [constitutional] claim without the deference AEDPA otherwise requires." Panetti v. Quarterman,

551 U.S. 930, 953 (2007); see also Williams, supra, 529 U.S. at 406 (when a state court decision is contrary to controlling Supreme Court law, a federal habeas court is "unconstrained by § 2254(d)(1)").  In other words, if a § 2254(d)(1) error occurs, the constitutional claim raised must be considered *de novo*.  Frantz v. Hazey, 513 F.3d 1002, 1012-15 (9th Cir. 2008); see also Rompilla v. Beard, 545 U.S. 374, 390 (2005).

## VI.  DISCUSSION

### A.  Instructional Error

In Ground One, Petitioner contends that the trial court failed to sua sponte instruct the jury with the lesser included offense of attempted voluntary manslaughter.  As support for his claim, Petitioner solely alleges that "[he] had been involved in a fist fight with alleged victims a short time before he allegedly shot at the victims."  (FAP at 5; see Lodgment No. 5 at 15-24 [alleging the claim that the trial court sua sponte failed to instruct the jury on attempted voluntary manslaughter because there was sufficient evidence for the jury to be instructed that the shooting was the result of heat of passion based on adequate provocation]).

Respondent contends that Petitioner has failed to specify under what theory he believes he was entitled to an attempted voluntary manslaughter instruction, failed to allege that his federal constitutional rights were violated, and failed to cite any authority, federal or otherwise, supporting his claim.  The Court concurs with

Respondent and finds Petitioner's claims, as framed in the First Amended Petition, to be conclusory. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995).

To the extent that Petitioner is contending that the trial court had a duty to sua sponte instruct the jury on the lesser included offense of attempted voluntary manslaughter based on the theory of heat of passion due to sufficient provocation, the Court concurs with Respondent's assertion that this claim is barred by Teague v. Lane, 489 U.S. 288, 316 (1989)(a new constitutional rule of criminal procedure cannot be retroactively applied in a habeas proceeding, unless the new rule falls within one of two narrow exceptions), and is not cognizable on federal habeas review. See Keeble v. United States, 412 U.S. 205, 213 (1973)(Supreme Court made clear that it had never explicitly held, and was not holding, that the Fifth Amendment due process clause guaranteed the right of a defendant to have the jury instructed on a lesser included offense); see also, e.g., Solis v. Garcia, 219 F.3d 922, 928-29 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998)("Under the law of this circuit, the failure of a state court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question."); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir. 1995) (noting that the Ninth Circuit "has declined to find constitutional error arising from the failure to instruct on a lesser included offense in a noncapital case," and that to hold otherwise would create a new rule in violation of Teague v. Lane), overruled on other grds, Tolbert v. Page, 182 F.3d 677 (9th Cir. 1999).

Therefore, the California Supreme Court's rejection of this claim cannot be contrary to, or an unreasonable application of, clearly established federal law.

The Ninth Circuit has held that a "defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule" that the failure of a state trial court to instruct on lesser-included offenses in a non-capital case does not present a federal constitutional claim. See Solis, supra, 219 F.3d at 929 (citation omitted); see also Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002)(petitioner's federal constitutional right to due process violated where the defense theory of the case was entrapment and the trial court in the second trial refused to give an entrapment instruction); and Conde v. Henry, 198 F.3d 734, 739-40 (9th Cir. 1999)(petitioner's federal constitutional right to due process violated where there were two inconsistent defense theories of the case -- first, that the petitioner was innocent, and second, that the petitioner was guilty of kidnapping for the purposes of burglary but not robbery -- and the trial court refused to instruct the jury on the crime of simple kidnapping in accordance with the second defense theory). However, this rule does not benefit Petitioner who did not argue as his theory of defense that he was guilty of attempted voluntary manslaughter based upon heat of passion due to sufficient provocation.[22]   See Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984)("There was no fundamental unfairness in the trial court's failure to instruct the jury on lesser

---

[22]    See 4 RT 1573-91 (petitioner's counsel argued during closing argument that the prosecution had not met its burden of proving guilt beyond a reasonable doubt).

included offenses" when the petitioner did not base his theory of defense on those lesser included offenses).

The California Court of Appeal rejected Petitioner's claim, concluding that the evidence presented at trial did not support a voluntary manslaughter instruction:

[Petitioner] contends the lesser included offense instruction should have been given because the evidence showed he reasonably responded to adequate provocation, since he "was the victim of an assault and shot Richard in response to that physical provocation," and it should have been left to the jury to decide if he had sufficient time to cool down before shooting Richard. We disagree. Even if [petitioner] satisfied the objective element of attempted voluntary manslaughter by showing he reasonably responded to adequate provocation, which we doubt, there was certainly no substantial evidence of the subjective element, i.e., that [petitioner's] reason had been obscured by a strong passion.

As the Attorney General points out, the witnesses 'generally did not testify to petitioner's demeanor during the shooting. To the extent they did, their descriptions of the shooting were consistent with [petitioner] being calm and collected." "There was no evidence [petitioner] acted rashly, under the sway of intense emotion. Rather, [petitioner] reflected and planned his attack. He changed clothes, left the house without notice, got a gun, and [apparently] met up with a getaway driver before approaching Richard. [Petitioner] deliberately and precisely fired two shots

at Richard, both of which hit him as he was diving for cover.  This planning and exacting method of attempted murder is a strong indication that [petitioner] did not act in the subjective hit of passion. . . .  In short, there was absolutely nothing passionate about [petitioner's] calculated attempt at revenge."  The Attorney General's argument is firmly grounded on established principles because first degree murder "is evidenced by planning activity, a motive to kill or an exacting manner of death," a state of mind "'manifestly inconsistent with having acted under the heat of passion – even if that state of mind was achieved after a considerable period of provocatory conduct.'" (*People v . Carasi* (2008) 44 Cal.4th 1263, 1306.)

[Petitioner] argues that the jury could have reasonably concluded he had not cooled off by the time he shot Richard: "[Petitioner] was obviously extremely angry that he had been assaulted by Richard.  The fact that [petitioner] engaged in a certain amount of deliberate behavior to acquire a gun did not mean that he had cooled down before the shooting occurred. . . . Indeed, it appeared that Richard had not calmed down.  He was agitated when the shooting occurred and had to be restrained by his family members from attempting to remove [petitioner] from the house.  It was only reasonable to presume that [petitioner] was equally agitated."  However, [petitioner] cites no authority giving this court the power to make such a presumption on appeal, and we cannot envision a possible basis for that power.

[Petitioner] also argues his "shooting at [Richard], by

itself, demonstrated anger and passion." But the mere act of firing a gun at someone cannot by itself demonstrate that the shooter's reason was obscured by passion; consider the example of an assassin-for-hire. As [petitioner] recognizes, there was plenty of evidence showing *Richard's* state of mind that day. Various witness, including Richard himself, testified he was extremely upset, screaming and yelling, and had to be calmed down by family members. There was, however, no evidence showing *[petitioner]* was similarly upset. The only arguable state of mind evidence we came across is Andy's testimony that after the fight, when [petitioner] went into the house to use the phone, he "was talking loud and still kind of full of adrenaline." [Petitioner] does not even suggest this testimony constitutes substantial evidence he "acted while under 'the actual influence of a strong passion' [which] caused him to '"act rashly or without due deliberation and reflection, and from this passion rather than from judgment."'" (*People v. Moye* (2009) 47 Cal.4th 537, 553.)

In sum, we agree with the Attorney General there was simply no substantial evidence of the requisite subjective element of attempted voluntary manslaughter, i.e., that [petitioner's] "reason was actually obscured as a result of a strong passion . . . ." (*People v. Breverman*[] [   ] (1998) 19 Cal.4th [ ] [142][,] 163). And even assuming arguendo this had been the case during or right after the fight, the evidence showed [petitioner] actually cooled down before shooting Richard." "If, in fact, the defendant's passion did cool, which may be shown by circumstances such as the transaction of other business in the meantime . . . [or] evidence

16

of preparation for the killing, etc., then the length of time intervening is immaterial.'" (*People v. Golsh* (1923) 63 Cal.App.609, 617; see, e.g., *People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1704 ["The only inference to be drawn is that any passions that may have been aroused upon first hearing the reports of molestation had cooled so that the killing became an act of revenge or punishment."].) "*[A] passion for revenge* . . . will not serve to reduce murder to manslaughter." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1144).

The trial court did not err by failing to instruct the jury, sua sponte, on attempted voluntary manslaughter as a lesser included offense. (Lodgment 4 at 6-8).[23]

The Court agrees with the California Court of Appeal's finding that there simply was no evidence that Petitioner acted in the heat of passion due to provocation. See Pen. Code § 192(a); People v. Carasi, 44 Cal.4th 1263, 1306 (2008); People v. Rios, 23 Cal.4th 450, 460 (2000); People v. Lee, 20 Cal.4th 47, 59 (1999); People v. Breverman, 19 Cal.4th 142, 163 (1998); People v. Barton, 12 Cal.4th 186, 199 (1995). Indeed, the evidence presented at trial -- that Petitioner changed clothes after the fight with Richard and before the shooting (see 3 RT 1026); that Petitioner walked in a leisurely fashion from the street

---

[23] Petitioner raised the claims raised in the FAP in his Petition for Review to the California Supreme Court which denied the claims without comment or citation to authority. (See Lodgments 5-6). Under Ylst v. Nunnemaker, 501 U.S. 797 (1991), it may be presumed that the California Supreme Court's silent denial did not intend to change the California Court of Appeal's reasoned decision rejecting Petitioner's claims. Id., at 803-04.

corner to the house where Richard was located (<u>see</u> 2 RT 640, 672, 711-12; 3 RT 926-27, 995-96); that Petitioner had a gun and fired two precise shots at Richard from a short distance (<u>see</u> 2 RT 644-45, 672-73, 712-13; 3 RT 927-30, 932, 996-98); that Petitioner leisurely walked away after shooting Richard (<u>see</u> 2 RT 645, 672; 3 RT 1001); and that following the shooting Petitioner left the scene in a car driven by a getaway driver (<u>see</u> 2 RT 645-46, 648-49, 714-15, 718-19; 3 RT 1001-02)--did not show an act that was rash or without due deliberation and reflection.  See <u>People v. Lee</u>, <u>supra</u>, 20 Cal.4th at 60; <u>People v. Breverman</u>, <u>supra</u>.  Moreover, the California Court of Appeal found that evidence of Petitioner's preparation for the killing, specifically, his changing clothes, leaving the house, apparently meeting with someone who acted as a getaway driver, obtaining a gun, and returning to the house where Richard was located showed that Petitioner had cooled down during the period between his argument with Richard and his return to the scene.  See <u>People v. Golsh</u>, 63 Cal.App. 609, 617 (1923)(the fact that a defendant's passion had cooled down may be shown by "evidence of preparation for the killing"); <u>People v. Middleton</u>, 52 Cal.App.4th 19, 34 (1997)(defendant's return to the scene of an earlier altercation after obtaining a gun "represented a distinct and divisible event in the sequence of events and provided him sufficient time to 'cool down'").

Thus, to the extent Petitioner's instructional error claim may be cognizable on federal habeas review, the Court finds and concludes that the California Supreme Court's rejection of his claim was not contrary to, or an unreasonable application of, clearly established federal law.

**B.   Sentencing Error**

In Ground Two, Petitioner contends that he was improperly punished for two offenses arising from the same act.  As support for his claim, Petitioner alleges that "he was convicted of firing a weapon and convicted of possessing that weapon while being a felon."  (FAP at 5; see Lodgment No. 5 at 25-30 [alleging the claim that the trial court erred in failing to impose a stay on the sentence on the conviction for possession of a firearm by a felon because the conduct associated with that crime was indivisible from the conviction for attempted murder, in violation of P.C. § 654 and the Federal Due Process Clause]).[24]

The Court concurs with Respondent that, as framed in the FAP, Petitioner's sentencing error claim is conclusory.  See James v. Borg, supra; Jones v. Gomez, supra.

To the extent Petitioner claims that his sentence was imposed in violation of P.C. § 654[25] under California law, this claim involves the application and/or interpretation of state law and consequently is not

---

[24]   To the extent that Petitioner may be attempting to allege that his sentence for both convictions violated the Double Jeopardy Clause of the Fifth Amendment, Petitioner did not present this claim to the California Supreme Court (see Lodgment 5) and it is therefore unexhausted.  See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); Peterson v. Lampert, 319 F.3d 1153, 1156 (9th Cir. 2003)(en banc); Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996).

[25]   P.C. § 654(a) provides that: "An act or ommission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under only one bars a prosecution for the same act or omission under any other."

cognizable on federal habeas review.  See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)(reiterating that it is not the province of a federal habeas court to reexamine state court determinations on state law questions); Smith v. Phillips, 455 U.S. 209, 221 (1982)("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in violation of some provision of the United States Constitution."); Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989)(sentencing error claim under California Penal Code § 654 is not cognizable on federal habeas review).

    To the extent that Petitioner has attempted to frame his claim as a federal due process violation based upon the trial court's failure to impose the correct sentence under P.C. § 654 (see Lodgment No. 5 at 30), he is not entitled to federal habeas relief.  A state may not arbitrarily deprive a defendant of a state law entitlement affecting his liberty interest.  See, e.g., Hicks v. Oklahoma, 447 U.S. 343, 346 (1980); Fetterly v. Paskett, 997 F.2d 1295, 1300 (9th Cir. 1993) ("[T]he failure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state.").  However, since the United States Supreme Court has never recognized that P.C. § 654 creates a liberty interest that is protected by the Fourteenth Amendment, the California Supreme Court's rejection of this claim cannot be contrary to, or involve an unreasonable application of, clearly established federal law.  Morever, the California Court of Appeal's finding that the trial court did not err under state law in sentencing Petitioner for both attempted murder and possession of a gun by a felon because they constituted two separate acts and Petitioner had two separate intents (see Lodgment 4 at

10-11) satisfied any liberty interest that Petitioner may have had under P.C. § 654. <u>See</u> <u>Arrequin v. Prunty</u>, 208 F.3d 835, 837 (9th Cir. 2000)("If a state, however, permits its appellate courts to cure the deprivation of a state-created right and the deprivation is cured, then the state-created right cannot form the basis of a liberty interest."), <u>overruled on other grounds by</u> <u>United States v. Buckland</u>, 289 F.3d 558, 566 (9th Cir. 2002).

Thus, the Court finds and concludes that the California Supreme Court's rejection of Petitioner's sentencing error claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

<div align="center">

**VII.   <u>ORDER</u>**

</div>

For the reasons discussed above, IT IS ORDERED that the First Amended Petition is denied and this action is dismissed with prejudice.

Dated: May 4, 2015.


<div align="center" style="margin-left:40%">

_/s/_
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

</div>